# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with Facebook account user ID 100066385451175 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 24 - M - 640 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____Eastern____ District of ____Wisconsin____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. §§ 922(g)(1); 922(o); 924(c) and 924(o) | Possession of firearm by a felon<br>Unlawful possession of Machinegun; Use of firearm in Federal drug/violent crime<br>Conspiracy to commit an offense under 924(c) |

The application is based on these facts:

See Attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

BRADLEY KURTZWEIL    Digitally signed by BRADLEY KURTZWEIL
Date: 2024.04.30 10:33:35 -05'00'

*Applicant's signature*

Bradley Kurtzweil; ATF SA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____

*(specify reliable electronic means).*

Date: 4/30/2024

Judge's signature

City and state: Green Bay, Wisconsin

Hon. James R. Sickel, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Bradley Kurtzweil, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2.      I am a Special Agent of the United States Justice Department, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since March 2020. My duties with ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3.      I completed approximately 26 weeks of training (approximately 1000 hours) at the Federal Law Enforcement Training Center (Glynco, Georgia) and ATF's National Academy. The training included courses on constitutional law such as search and seizure, and conducting investigations through searches, arrests, interviews, surveillance, and evidence collection.

4.      During my time at ATF, I have attended specialized training from the ATF related to the determining the interstate NEXUS of firearms and ammunitions. I regularly perform physical examinations of firearms for various purposes, including a determination of interstate/foreign commerce nexus and appropriate classification under the Gun Control Act of

1968. Additionally, I frequently conduct research by referencing industry-related public reference materials widely utilized by law enforcement and civilian firearms experts, manufacturer's websites, law enforcement reports, records maintained by ATF as part of its function to regulate the firearms and ammunition industry, as well as conversations with manufacturers and/or other experts in the industry. I have also interviewed multiple individuals involved in firearms and drug trafficking, obtaining information regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances, resulting in prosecutions, convictions and the seizure of illegal drugs and weapons.

5. Prior to joining ATF, I was a sworn Police Officer in the State of Illinois from March 2011 to March 2020. I completed 12 Weeks (approximately 480 hours) of basic training at the Illinois State Police Academy from April 2011 to June 2011.

6. My most recent position was with the Bolingbrook Police Department in Bolingbrook, Illinois, where I was a Patrol Officer from December 2012 until March 2020. From July 2017 until March 2020, I also served as an Evidence Technician, assigned to Patrol. During my time in Bolingbrook, I received eight Written Recognitions and two Commendations.

7. During my career as a Police Officer, I attended approximately 520 hours of additional training in areas including evidence collection, interview/interrogation, arson and explosives, gang investigations, and drug investigations.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

9.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 922(g)(1) (Possession of firearm by a felon), 922(o) (Unlawful possession of Machinegun), and 924(c) (Use of firearm in Federal drug/violent crime), and 924(o) (Conspiracy to commit an offense under 924(c)) have been committed by John D. TAYLOR (DOB xx/xx/1987).   There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

10.      This affidavit is based in part on information provided by a confidential human source (CHS). CHS has a criminal history consisting of four felony and four misdemeanor convictions.   CHS has agreed to cooperate with law enforcement based on pending charges which have not been filed by the Winnebago County District Attorney's Office.   CHS has not received specific promises regarding the impact of any cooperation on CHS's case.   CHS is not receiving monetary compensation for cooperating in this investigation. CHS has a known history of illegal drug use, but officers are not aware that said drug use has impacted CHS's ability to perceive and recall events.   CHS does not have any convictions for perjury, fraud, lying or misrepresentation. CHS has provided information to law enforcement which has been independently corroborated by an additional confidential human source, including corroborated information pertaining to the target(s) of this investigation.   CHS has also provided information against CHS's own penal interest.

11.      To prevent disclosure of CHS's identity, this affidavit contains a general summary of CHS's criminal history, factors impacting CHS's credibility, and CHS's perceived motivation to cooperate with law enforcement. Affiant knows that disclosure of CHS's identity could impact

3

CHS's willingness to continue to cooperate with law enforcement, jeopardize CHS's safety, and discourage others from cooperating with law enforcement in the future.

## PROBABLE CAUSE

12.     On 03/09/2024, Lake Winnebago Area Metropolitan Enforcement Group (LWAM) Investigator Zach Mulroy received information from CHS that a person known to CHS had multiple firearms for sale, to include machineguns.

13.     On 03/11/2024, LWAM Invest. Mulroy and ATF Special Agent Brad Kurtzweil met with CHS. At the time of the meeting, CHS allowed Law Enforcement to review photos, videos, messages, and voice recordings from Facebook Messenger conversations between "John Taylor" and CHS and "Sugar Honey" and CHS.

14.     Using information provided by CHS, publicly available information contained on their Facebook profiles, and information available to Law Enforcement, SA Kurtzweil was able to identify the Facebook profile for "John Taylor," as belonging to TAYLOR (Facebook ID# 100066385451175) and the Facebook profile for "Sugar Honey," as belonging to Kaitlynn SEYMOUR (Facebook ID# 100036936113164). Additionally, an NCIC criminal history check indicated TAYLOR to be a convicted felon and SEYMOUR to have a felony warrant for her arrest.

15.     CHS advised that TAYLOR had sent them multiple messages wanting to sell CHS firearms. SA Kurtzweil observed a messaged sent by TAYLOR to CHS on 03/08/2024, which read, "I'm picking up some full A toys today if your interested." CHS interpreted "full A," to be slang for "Fully Automatic." SA Kurtzweil observed a voice message left on 03/10/2024, in which TAYLOR stated in part, "…I got a whole new shipment of blippity blaps (sp) and some stuff and things if you want to come over and check them out…" CHS understood

4

the message to mean TAYLOR had firearms for sale. Additionally, SA Kurtzweil observed a video from 03/11/2024, sent by TAYLOR, of an AR style rifle, which was allegedly modified to shoot fully automatic.

16. CHS advised SEYMOUR is a common associate of both CHS and TAYLOR and was trying to help broker the sale of firearms by TAYLOR to CHS. SA Kurtzweil observed approximately 14 videos (featuring 12 different firearms) sent to CHS by SEYMOUR on behalf of TAYLOR. SA Kurtzweil viewed each video. The following descriptions are based on what was verbally described in the video and what SA Kurtzweil observed while watching the videos:

    a. Ruger 380 LCP and 380 ACP (Figure 1).



Figure 1

    b. Modified 336 Marlin Lever Action with a Midwest Industries M-Lok rail system and picatinny rail on the top.

    c. Dixon Tactical 12 Guage Pump Action Shotgun.

5

d. American Tactical MP-5, 22 Long Rifle High Velocity, with a 100 round drum magazine and a 30-round stick magazine. Based on SA Kurtzweil's training and experience, it appears that this rifle, may have a barrel that is less than 16 inches.

e. 1911, 45, punisher logo on the grip, ambidextrous safety, tactical version with rails (Figure 2). SA Kurtzweil observed also present in the video of the pistol, was was a rifle magazine with "300" written on it, as well as a box of ammunition with a pipe sitting on top of it. SA Kurtzweil recognized the pipe to be commonly used drug smoking paraphernalia.



Figure 2

f. Stevens 20 Guage Pump Action Shotgun.

g. M4, E1, 65 round drum magazine, and 3 30 round magazines." Taylor also noted the firearm is modified and "Not cheap." SA Kurtzweil observed this firearm featured a telescoping stock or arm brace, vertical foregrip and bipod attachment.

h. Derringer 357 Magnum (Figure 3).



Figure 3

i. Sawed off with laser on it, with a bandoleer attached for shells and a break action barrel (Figure 4). SA Kurtzweil observed this firearm had a pistol grip and what appeared to be a barrel of less than 18 inches.

7



Figure 4

j.  300 Blackout, "Short Barrel SBR." Based on SA Kurtzweil's training and experience, it appears that this rifle, may have a barrel that is less than 16 inches.

k.  XDM, 40 caliber, extended magazine, regular magazine, threaded barrel, laser iron sight (Figure 5). SA Kurtzweil again observed that in addition to the described pistol, there was a rifle magazine with "300" written on it, as well as a box of ammunition with a pipe sitting on top of it. SA Kurtzweil recognized the pipe to be commonly used drug smoking paraphernalia.

8



Figure 5

1. 22 Revolver that he shoots 17 HMR out of it. Taylor notes this is the "Cheapest" firearm he has (Figure 6).



Figure 6

17. While watching the videos sent by SEYMOUR to CHS, SA Kurtzweil observed that the voice narrating the videos sounded like the same voice from the voice message sent by TAYLOR to CHS. Additionally, SA Kurtzweil observed destinctive tatoos and rings on the left hand of the person narrating and handling the firearms (Figures 7 and 8), which appear to match tatoos on TAYLOR's left hand, observed in a publicly availabe photo of TAYLOR on Facebook (Figure 9).

 

Figure 7                                   Figure 8

Case 1:24-mj-00640-JRS   Filed 04/30/24   Page 11 of 26   Document 1



Figure 9

18. CHS knows TAYLOR to reside in Redgranite, WI.

19. CHS knows TAYLOR and SEYMOUR to be users of illegal narcotics, specifically Methanphetamine.

20. After obtaining the information from CHS, SA Kurtzweil learned that LWAM Investigator Troy Brandl and Wisconsin Department of Criminal Investigations (DCI) Special Agent/Drug Enforcement Agency (DEA) Task Force Officer (TFO) Nick Gates had attended a debrief of an additional and separte confidential human source on 03/11/2024, who had provided some of the same information regarding TAYLOR, to include TAYLOR was residing in Redgranite, WI.

21. Additionally, SA Kurtzweil learned on, 02/16/2024, DEA Milwaukee executed a search warrant in Milwaukee, WI, which resulted in the seizure of appoximately 4 firearms and

11

16 pounds of Methanphatamine. Through their inveistgation, TFO Gates learned that two of the recovered firearms had been purchased from/supplied by TAYLOR.

22. Based in part on the above-described evidence Federal Search warrants have been issued for TAYLOR's Facebook account (24-M-626), cell phone records and locations (24-M-632) and residential search warrant (24-M-635). The residential search warrant was executed on 04/18/2024 which resulted in the seizure of 21 firearms, approximately 1865 rounds of ammuntion, approxiamtely 25.3 grams of methamphetamine and TAYLOR's arrest (comlaint 24-M-634). Additionally PTT application #16108 was issued for TAYLOR's Facebook.

23. Search warrant 24-M-626 encompassed TAYLOR's Facebook records from 01/01/2024 to 03/19/2024. A review of those records along with review of Pen Trap and Trace records indicate TAYLOR actively used his Facebook to communicate with other people in furtherance of his illegal trafficing of firearms and narcotics up until he was taken into custody on 04/18/2024. I now seek to obtain TAYLOR's more recent Facebook records, 03/20/2024 to present.

## BACKGROUND CONCERNING FACEBOOK

24. Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

25. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and

zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

26.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

27.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

28.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to locations or add their locations to their Facebook

13

posts, thereby revealing their geographic locations at particular dates and times. A user's profile page also includes a "Wall," which is a space where the user and the user's "Friends" can post messages, attachments, and links. Such posts are visible to others depending on the user's privacy settings.

29.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" or be "tagged" by other users in a photo or video. When a user is tagged in a photo or video, the user generally receives a notification of the tag and a link to see the photo or video.

30.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, and video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and retains transactional records related to voice and video chats. Facebook users can post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

31.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of pages.

33.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

34.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log

14

includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

36.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("Apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

37.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

38.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

39.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between

15

the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

40.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.

41.     In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent

16

to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information to conceal evidence from law enforcement).

42. Therefore, Meta's servers likely contain the material described above, including stored electronic communications of Facebook's subscribers/users, and their account access, transaction, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

43. I anticipate executing this warrant under the Electronic Communications Privacy Act, 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

44. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

45. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" that "has jurisdiction over the offense being investigated," as defined by 18 U.S.C. §§ 2711, 2703(a), (b)(1)(A), & (c)(1)(A).

17

BRADLEY
KURTZWEIL

Digitally signed by BRADLEY
KURTZWEIL
Date: 2024.04.30 10:33:07 -05'00'

Special Agent Bradley Kurtzweil
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me telephonically this ___ day of April 2024,

Honorable James R. Sickel
United States Magistrate Judge
Eastern District of Wisconsin

18

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with Facebook account user ID 100066385451175 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

**I.**     **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities 03/20/2024 to present;

(c)     All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them 03/20/2024 to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)      All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f)      All other records and contents of communications and messages made or received by the user 03/20/2024 to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)      All "check ins" and other location information;

(h)      All IP logs, including all records of the IP addresses that logged into the account;

(i)      All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)      All information about the Facebook pages that the account is or was a "fan" of;

(k)      All past and present lists of friends created by the account;

(l)      All records of Facebook searches performed by the account 03/20/2024 to present;

(m)      All information about the user's access and use of Facebook Marketplace;

(n)      The types of service utilized by the user;

2

(o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)    Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)    All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

3

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 18 U.S.C. §§ 922(g)(1), 922(o), 924(c) and 924(o) involving John D. TAYLOR 03/20/2024 to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a)  The relevant offense conduct, any preparatory steps taken in furtherance of the criminal scheme, and communications between TAYLOR and others related to the relevant offense conduct of possession of firearms by a convicted felon or providing firearms to felons.

(b)  Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c)  Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d)  The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(e)  The identity of the person(s) who communicated with the user ID about matters relating to the illegal possession or transfer of firearms.

4

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.      such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature

2